**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

HENRY T. MASON,

Plaintiff,

v.                                                          CAUSE NO. 3:26-CV-968-TLS-JEM

BRIAN ENGLISH, et al.,

Defendants.

**OPINION AND ORDER**

Henry T. Mason, a prisoner without a lawyer, filed a complaint. ECF 2. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mason claims that he has homicidal thoughts about all Indiana Department of Correction Facilities that have two-man cells. He specifically mentions Miami Correctional Facility, Wabash Valley Correctional Facility, and Newcastle Annex. He also indicates that he hears voices that direct him to kill all cellmates at these two-man cell facilities. These voices are "from Charles Manson, Ted Bundy, Richard Ramirez, Jeffrey Dahmer, John Wayne Gasey." ECF 2 at 2. Mason was transferred to Miami Correctional Facility on May 12, 2026.

Mason told the person who conducted his intake about his homicidal thoughts. He also sent Warden Brian English a request form telling him about his homicidal thoughts. He included

a copy of his mental health records to substantiate his claim that he is having homicidal thoughts and hearing voices.

Mason submitted multiple requests for health care beginning on May 13, 2026. He was seen by a mental health worker on May 26, 2026, but this individual indicated she was only there for the day and his follow up would occur with someone else. When Mason submitted his complaint on June 1, 2026, he had not yet seen a mental health worker for follow-up care.

On May 20, 2026, Mason told Unit Team Manager Nathanel Angel about his homicidal thoughts. In response, Mason was assigned to Department Wide Administrative Segregation. Mason challenged that decision by filing a classification appeal. That appeal was handled by K. McKinney. Mason believes that it is not appropriate to assign him to Department Wide Administrative Segregation when his homicidal thoughts are linked to a mental health disorder. He wants to be immediately transferred to Indiana State Prison and monetary damages.

The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law . . .." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Seventh Circuit has "concluded that inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their

2

classifications and prison assignments.”); *Healy v. Wisconsin*, 65 F. App’x 567, 568 (7th Cir. 2003) (“[I]nmates do not have a protected liberty interest in a particular security classification.”) (citing *Sandin*, 515 U.S. at 486).

Although later cases have questioned the conclusion that placement in nonpunitive segregation can “*never* implicate a liberty interest,” *Williams v. Brown*, 849 F. App’x 154, 157, n.3 (7th Cir. 2021) (emphasis added), timing plays a part in the analysis, even when conditions are significantly harsher. *See, e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) (“Prisoners do not have a constitutional right to remain in the general population, but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.”) (cleaned up); *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697–98 & nn.2–3 (7th Cir. 2009) (“In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.”) (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing “duration” is a component that plays a part in determining whether a liberty interest exists).

Here, Mason has been housed in administrative segregation only since May 20, 2026. This is not a sufficient amount of time to trigger due process concerns. *See Marion*, 559 F.3d at 698–99 (explaining determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage); *Atwater v. Nickels*, No. 21-2510, 2022 WL 1468698, at *1 (7th Cir. May 10, 2022) (citing *Marion*, 559 F.3d at 694–98).

Furthermore, Mason does not describe the conditions in administrative segregation such that they can be compared to those associated with ordinary prison life. “Courts have deemed an

3

inmate's liberty interest implicated only where the conditions are far more restrictive." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (collecting cases and finding conditions where plaintiff was "allowed limited possessions, dressed in a 'suicide-proof gown,' served meals on Styrofoam trays, kept in continuous light for the first 24 hours, and closely and constantly monitored by prison staff" did not trigger due process concerns). Accordingly, Mason has not stated a plausible due process claim regarding his placement in administrative segregation.

Although Mason has not requested relief in the form of mental health care, he does complain that there was a delay of approximately thirteen days between when he requested care for his mental health condition and when a mental health provider was able to see him. He also takes issue with the failure to provide follow-up care in the five days that passed between the May 26, 2026 meeting with a provider and the filing of his complaint on June 1, 2026. He seeks to hold Warden Brian English, K. McKinney, and Nathanel Angle liable for his allegedly inadequate mental health care because each had a copy of his mental health records.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of

4

being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Negligence does not state a claim. *Estelle*, 429 U.S. at 106 (explaining negligence does not constitute deliberate indifference).

Here, Warden Brian English, K. McKinney, and Nathanel Angle were not medical or mental health providers. Mason submitted a health care request, and he was seen by a mental health provider, even if the appointment did not occur as fast as Mason would have liked. These defendants cannot be held liable for the allegedly inadequate medical care Mason received based merely on their knowledge that he has suffered from homicidal thoughts and auditory hallucinations in the past and claimed he was having these symptoms again.

To the extent he is attempting to hold the Warden of the Miami Correctional Facility responsible in his official capacity, his claim fares no better. The facts alleged in the complaint do not allow a reasonable factfinder to plausibly infer that the mental health care Mason received at the Miami Correctional Facility fell below constitutional standards.

Mason's complaint does not state a claim for which relief can be granted. If Mason believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) GRANTS Henry T. Mason until **August 6, 2026**, to file an amended complaint; and

(2) CAUTIONS Henry T. Mason if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on July 9, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

6