**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**SOUTH BEND DIVISION**

| | |
|---|---|
| HENRY T. MASON,<br><br>Plaintiff,<br><br>v.<br><br>BRIAN ENGLISH, et al.,<br><br>Defendants. | CAUSE NO. 3:26-CV-968-TLS-JEM |

**OPINION AND ORDER**

Henry T. Mason, a prisoner without a lawyer, filed an amended complaint against Warden Brian English, Nathanel Angle, and K.M. Kinney. ECF 8. A month later, he filed a motion seeking a preliminary injunction. ECF 11. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mason's allegations in his amended complaint are similar to those in his earlier complaint. He resides at the Miami Correctional Facility and is housed in a restricted housing unit. Mason asked Nathanel Angle why he remains in restrictive housing. Angle indicated it was because of a class B disciplinary infraction. Mason, however, indicates that he satisfied this

sanction by December 6, 2025. Mason has homicidal thoughts and hears voices.[1] Mason believes that he remains in restrictive housing because of his mental health problems.

While in restrictive housing, Mason's health has allegedly deteriorated. He indicates that his cardiovascular health has deteriorated, although he provides no further details about his cardiovascular health. He claims he also has headaches, lethargy, transient insomnia, and appetite dysfunction. He provides no further details about these conditions.

Mason has written request slips addressed to each of the defendants. It is unclear what information was included in these requests, but it seems that Mason was requesting mental health care. He indicates that none was provided because there was nobody at the Miami Correctional Facility who could see him.

Mason indicates he asked to talk to the Heath Services Administrator too, but he received no response. He also indicates he asked for a behavior modification plan, but he was told that no mental health workers were on site. He indicates he is in psychosis and needs around the clock mental health care.

Mason claims he is scheduled to be transferred to Indiana State Prison, but the transfer has not yet occurred. Mason asserts that K.M. McKinley is in charge of all moves.

Mason indicates he is suing Warden Brian English because he has not established that Mason is being seen by mental health staff. He is suing McKinney because he allegedly denied him a right to an in person hearing where he could present information.

[1] In Mason's motion seeking a preliminary injunction, he provides additional details regarding the voices he hears. The voices are from Charles Manson, Ted Bundy, Richard Ramirez, Jeffrey Dahmer, and John Wayne Gasey and they allegedly direct him to kill all cellmates assigned to his cell. ECF 11-1.

While in restrictive housing, Mason has been denied showers and recreation, served cold food on Styrofoam trays, and housed in an unsanitary cell without cleaning supplies. Mason provides no further details regarding any of these alleged conditions.

In his amended complaint, Mason asks for money damages, an emergency transfer to Indiana State Prison, and that he be "placed on [SMI] See Psy D, every 14 days." ECF 8 at 4.

<u>Conditions of Confinement</u>

"Although the Constitution does not mandate comfortable prisons, it does mandate humane ones." *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (internal quotation marks and citation omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). The Eighth Amendment requires inmates to be provided with "humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Thomas*, 2 F.4th at 719 (quoting *Farmer*, 511 U.S. at 832). They must also be provided with "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). "Some conditions of confinement may establish an Eighth Amendment violation in combination when each alone would not do so." *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must allege that the defendant acted with deliberate indifference to his health or safety. *Farmer*, 511 U.S. at 834. To satisfy this standard, "the official must have actually known of and consciously disregarded a substantial risk of harm." *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022).

Here, Mason alleges that he has been denied showers and recreation, served cold food on Styrofoam trays, and housed in an unsanitary cell without cleaning supplies. These conclusory allegations are far too vague to allow a plausible inference that he was denied the minimal civilized measure of life's necessities. Furthermore, Mason has not alleged facts from which it can be plausibly inferred that any defendant actually knew of any unconstitutional condition of confinement referenced in Mason's amended complaint and consciously disregarded a substantial risk of harm.

Due Process

The Fourteenth Amendment provides state officials shall not "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In other words, "disciplinary segregation *can* trigger due process protections depending on the duration and conditions of segregation." *Jackson v. Anastasio*, 150 F.4th 851, 858 (7th Cir. 2025) (quoting *Marion v. Columbia Correction Inst.*, 559 F.3d 693, 697 (7th Cir. 2009). Both the duration and the severity of the conditions themselves must be considered when determining whether the prisoner's placement in solitary confinement triggers due process protections—the length of time must be "substantial" and the conditions must be "unusually harsh." *Id*.

Similarly, while inmates do not generally have a liberty interest in "avoiding transfer to *discretionary* segregation—that is, segregation imposed for administrative, protective, or investigative purposes[,]" *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (emphasis added) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005), the same

analysis applies with regard to duration and the harshness of the conditions. *See, e.g., Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017) ("Prisoners do not have a constitutional right to remain in the general population, . . . but both the duration *and* the conditions of the segregation must be considered in determining whether due process is implicated.") (internal quotation marks, parenthesis, and citations omitted); *Marion*, 559 F.3d at 697–98 & nn.2–3 (collecting cases that held segregation of two to ninety days does not trigger due process concerns and stating, "In a number of other cases, we have explained that a liberty interest may arise if the length of segregated confinement is substantial *and* the record reveals that the conditions of confinement are unusually harsh.") (emphasis added); *Lekas*, 405 F.3d at 612 (finding that up to ninety days in segregation does not affect liberty); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (recognizing "duration" is a component that plays a part in determining whether a liberty interest exists).

Once an inmate shows a particular placement implicates a liberty interest, he has a right to a meaningful review, which periodically "evaluates the prisoner's current circumstances and future prospects, and, considering the reason(s) for his confinement to the program, determines whether that placement remains warranted." *Isby*, 856 F.3d at 527 (quoting *Toevs v. Reid,* 685 F.3d 903, 913–14 (10th Cir. 2012)).

Here, Mason has remained in restricted housing for more than ten months after he had served his sanction, which is long enough to trigger due process concerns. *See Marion*, 559 F.3d at 698–99 (explaining the determination of whether 240 days in segregation imposed an atypical, significant hardship could not be made at the pleading stage). *See also Atwater v. Nickels*, No. 21-2510, 2022 WL 1468698, at *1 (7th Cir. May 10, 2022) (citing *Marion*, 559 F.3d at 694–98).

Mason, however, has not described conditions that are considerably harsher than those associated with ordinary prison life. His only complaints are vague allegations regarding being denied showers and recreation an unspecified number of times, served cold food on Styrofoam trays an unspecified number of times, and being housed in a cell that he deemed unsanitary without providing any further explanation of what was unsanitary about the cell. "Courts have deemed an inmate's liberty interest implicated only where the conditions are far more restrictive." *Earl v. Racine Cnty. Jail*, 718 F.3d 689, 691 (7th Cir. 2013).

Moreover, to state a due process claim, Mason must allege that he did not receive the process that was due. He was entitled only to meaningful review to determine whether his placement remains appropriate. *See Isby*, 856 F.3d at 527. Mason does not allege that his placement was not periodically reviewed or that those reviews were inadequate. Mason alleges only that McKinley denied him an in-person hearing where he could present information. The Constitution, however, does not guarantee Mason an in-person hearing when being held in administrative segregation. It guarantees only meaningful review. Because Mason has not alleged that he did not receive periodic reviews of his placement that satisfied the requirements of the Due Process Clause, he cannot proceed on a due process claim against any defendant named in this action.

<u>Medical Claims</u>

Mason asks that he be "placed on [SMI] See Psy D, every 14 days." ECF 8 at 4. It is not entirely clear what this means, but he seems to be asking to see a psychiatrist every fourteen days. His amended complaint provides almost no information about the mental health care, if any, that he has received, although his earlier complaint establishes that he has received at least

some mental health care.[2] He opines that he needs "around the clock" mental health services. ECF 8 at 3.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer,* 511 U.S. at 834. A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Deliberate indifference means that the defendant "acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed [and] decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005). Negligence does not state a claim. *Estelle*, 429 U.S. at 106 (explaining negligence does not constitute deliberate indifference).

Here, Warden English, McKinney, and Angle were not medical or mental health providers. It is unclear when or how Mason submitted requests for mental health care or how those requests were addressed. He faults the defendants for not having mental health care professionals on site, but as long as the care he received complies with the Eighth Amendment, there is no requirement that health care professionals be on site. The defendants cannot be held liable for the allegedly inadequate medical care Mason received based merely on their

[2] Mason's earlier complaint alleged that he has to wait approximately thirteen days between when he asked for mental health care and when he saw a mental health provider. He also complained that follow-up care was not provided in the five days that elapsed between that visit and when he filed his earlier complaint.

knowledge that he has suffered from homicidal thoughts and auditory hallucinations in the past and claimed he was having these symptoms again.

To the extent he is attempting to hold the Warden of the Miami Correctional Facility responsible in his official capacity, his claim fares no better. The facts alleged in the amended complaint do not allow a reasonable factfinder to plausibly infer that the mental health care Mason received at the Miami Correctional Facility fell below constitutional standards. Mason's complaint does not state a claim for which relief can be granted. However, out of an abundance of caution, the court will direct the clerk to mail the warden a copy of this order and Mason's amended complaint and motion for preliminary injunction.

Preliminary Injunction

Mason's motion seeking a preliminary injunction and the accompanying affidavit alleges that he is being retaliated against in a variety of ways because he filed this lawsuit. The alleged retaliatory acts include being served cold food, food trays with missing items, and food trays with ½ portions. They also include leaving Mason in the shower for hours, placing him in scalding hot showers, denying him mental health assistance, and denying him access to an eye doctor and dental care. Additionally, he is allegedly being retaliated against by being denied access to religious services, a job, educational programs, and job training. Mason claims his life is in danger and he is not safe at the Miami Correctional Facility, but he does not explain how he has reached the conclusion that he is not safe.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in

the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In the absence of a complaint that states a claim, a plaintiff cannot demonstrate a reasonable likelihood of success on the merits. Even if the complaint did state a claim, the allegations regarding why Mason believes his life is in danger are far too vague to support a finding that he will suffer irreparable harm in the absence of an injunction.

Mason has already had one opportunity to amend his complaint. Still, if Mason believes he can state a claim based on (and consistent with) the events described in his amended complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file a second amended complaint, he needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

(1) DENIES Henry T. Mason's motion seeking a preliminary injunction (ECF 11);

(2) ORDERS the clerk to send the Warden of the Miami Correctional Facility a copy of this order and Henry T. Mason's amended complaint (ECF 8) and motion for preliminary injunction (ECF 11) due to his allegations that his life is in danger;

(3) ORDERS the Warden of Miami Correctional Facility to acknowledge receipt of these documents;

(4) DIRECTS the clerk to docket receipt of the acknowledgement;

(5) GRANTS Henry T. Mason until **October 21, 2026**, to file a second amended complaint; and

(6) CAUTIONS Henry T. Mason that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on September 28, 2026.

s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT